## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-23873-KMM

PATRICIA L. LOMBANA,

      Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION[1] ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' Cross Motions for Summary Judgment. Plaintiff Patricia Lema Lombana ("Plaintiff" or "Lombana") filed her Motion for Summary Judgment on March 24, 2020 ("Plaintiff's Motion"). ECF No. [19]. Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed his Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion on April 23, 2020 ("Defendant's Motion") arguing that the correct legal standard was applied. ECF Nos. [20], [21].[2] Along with his Motion, Defendant filed a Statement of Material Facts, ECF No. [22]. Plaintiff filed her Response to Defendant's Motion for Summary Judgment with Supporting Memorandum and Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment. ECF No. [24].

---

[1] On September 17, 2019, this matter has been referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters. ECF No. [2].

[2] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for Summary Judgment, ECF No. [21], it is the same document as Defendant's Motion, ECF No. [20].

Finally, Plaintiff also filed a Response to Defendant's Separate Statement of Material Facts.  ECF No. [25].  The Court must now determine whether the decision reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and whether the correct legal standards were applied.  After a review of the parties' motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED**.

## I.      BACKGROUND

On March 25, 2016, Lombana filed an application for Supplemental Security Income alleging disability beginning on March 18, 2016.  [R. at 66].[3]  Lombana, who was born on February 6, 1954, was sixty-two years old at the time her application was filed.  *Id*. at 387, 449.  The Social Security Administration ("SSA") initially denied the claim on May 25, 2016 and denied it again upon reconsideration on November 9, 2016.  *Id*. at 283, 289.  Lombana requested a hearing on January 4, 2017.  *Id*. at 294–96.  On July 11, 2018, Lombana, who was represented by counsel, testified at the hearing in Miami, Florida.  *Id*. at 219–60.  Donna Taylor, a vocational expert ("Taylor" or the "VE"), also testified at the hearing.  *Id*. at 241.  On October 25, 2018, the ALJ issued her decision denying Lombana's application.  *Id*. at 66–82.  On August 1, 2019, the Appeals Council of the Social Security Administration ("Appeals Council") affirmed the ALJ's decision.  *Id*. at 7–10.  Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Lombana filed the instant action.  ECF No. [1].

---

[3] References herein to "R. at __" are to the Social Security record, the pertinent parts of which can be found at ECF No. [12].  All the page numbers to the Social Security record referenced herein refer to those assigned by the electronic docketing system as found on the top right corner of the page.

### A.  The SSA Hearing

Lombana was sixty-four years old at the time of the hearing.  R. at 261.  As to the medical ailments that underlie her disability claim, Lombana testified that she underwent surgery to remove a tumor that was compressing her spinal column.  *Id.* at 230–31.  She also had a second surgery due to some leakage of spinal fluid.  *Id.* at 232.  Lombana testified that after these surgeries she continued to have neck and lower back pain, and that her pain was constant.  *Id.* at 232–33.  She also continued to have numbness in three toes on her right foot.  *Id.* at 231.  This numbness causes her to walk slowly as she is scared to trip.  *Id.*  Although she did not bring a cane with her to the hearing, she testified that she uses a cane when she goes to the park or when she walks on uneven surfaces because she falls on uneven surfaces.  *Id.* at 231–32.  According to Lombana, she does not feel "strong or safe" when walking or being by herself.  *Id.* at 235.  She later testified that she used her cane if she was walking a block or more.  *Id.*  She has fallen seven or eight times since having her surgeries.  *Id.* at 239.

As to her pain, Lombana testified that in a typical "good day" she is in pain and needs ample time to prepare for work.  *Id.* at 237.  After returning from work, she needs to lie down.  *Id.*  Lombana stated that although she is always in pain, she experiences an average of four "terrible" days a month.  *Id.* 237–38.  She testified that she recently had to miss a day of work because she was in too much pain.  *Id.*  Lombana also testified that she has trouble reaching due to her pain, she cannot twist or turn her hands because she has no strength, and she can sit about one hour but must get up and move around for about ten minutes before she sits down again because she gets leg cramps.  *Id.* at 238–39.  As for standing, she testified that she can stand for two hours, but then needs to rest for ten minutes by either sitting or walking.  *Id.* at 239.  Plaintiff takes a number of medications every day for her pain which she claimed were sometimes effective.  *Id.* at 233–34.

Lombana testified that her medications give her side effects that she described as "dry mouth, dizziness a little bit, and [that her] hands are always shaking." *Id.* at 234. During the hearing, the ALJ also inquired into whether her pain had led to any mental symptoms. *Id.* Lombana testified that she is "spacey," does not remember names, that her "concentration is not as sharp as it used to be," and that her "memory is not as good." *Id.* She also stated that she has anxiety and suffers from panic attacks for which she takes medication. *Id.*

As for daily activities and her current work, although she drives ten blocks to and from work, she cannot turn her neck when driving and tries to drive only when necessary. *Id.* at 235. Her daughter assists her with her grocery shopping and does the house cleaning. *Id.* at 235–36. Plaintiff dresses and bathes herself and prepares her own meals which she described as requiring "very little" cooking. *Id.* at 236–37. She watches television, does puzzles, and plays solitaire in her spare time, but testified that she can no longer read because of her poor concentration. *Id.* at 237. Lombana testified that she was currently working twenty-six hours a week at a children's boutique—four days a week she works five hours and one day a week she works six hours in the day. *Id.* at 239. Plaintiff testified she performs her job mostly seated. *Id.*

At the hearing, the VE categorized Lombana's past work history, using the Dictionary of Occupational Titles ("DOT") as follows: (1) ladies wear salesperson, as described in DOT 261.357-066, usually performed at a "light" exertion level, and performed at that level by Plaintiff, with a Specific Vocational Preparation ("SVP") rating of three; (2) furniture salesperson, as described in DOT 270.357-030, usually performed at a "light" exertion level, and performed at that level by Plaintiff, with an SVP rating of four; (3) building equipment and supply salesperson, as described in DOT 274.357-018, usually performed at a "light" exertion level, although Plaintiff performed it at the sedentary level, although that was unusual, with an SVP rating of six; and (4)

general merchandise salesperson, her current job, as described in DOT 279.357-054, generally performed at a "light" exertion level, although she performs it closer to sedentary, with an SVP rating of three. *Id.* at 250–52.

The ALJ asked the VE whether a hypothetical individual with Lombana's age, education, background, and past work history, could perform the range of work of Lombana with the limitation of requiring to sit and stand at will with no time off task. *Id.* at 252. The ALJ asked the VE to assume this hypothetical individual could occasionally climb ramps and stairs; was capable of occasionally stooping, kneeling, crouching, crawling; could frequently balance; and could work with no exposure to hazardous machinery or mechanical parts, unprotected heights, or vibration. *Id.* 252–53. The VE answered that this hypothetical individual could perform Lombana's past work as she performed the sales person general merchandise job and as she performed the building equipment and supplies sales representative job. *Id.* at 253. The ALJ later asked if a person limited to frequent reaching and frequent handling would be precluded from these two jobs, and the VE testified that they would not be precluded from that work. *Id.* at 258 The ALJ asked the VE whether a second hypothetical individual similar to the first but with a full range of sedentary level of exertion with the sit and stand option still "in play" could perform the general merchandise job or the building and equipment supplies job as performed. *Id.* at 253. The VE answered "yes." *Id.* The VE also testified that a limitation to frequent reaching, and frequent handling would not preclude these jobs. *Id.* at 258.

The ALJ also inquired if Lombana would have any transferable skills to a sedentary level of work. *Id.* at 253. The VE replied that due to her sales experience Lumbini's skills were transferable to only one job, telemarketing. *Id.* However, the VE added that Lombana would require "more than very little" vocational adjustment due to the different working environment

5

and her age.  *Id.* at 255.  The VE also testified that if she were limited to simple, routine, and repetitive tasks not at a production rate or pace, that position would not be available.  *Id.* at 256.

The ALJ asked the VE whether an individual who was unable to complete an eight-hour workday because they were off task for more than fifteen percent, or who could only work five hours in the day be considered employable in the full-time sense in the economy.  *Id.* at 255–56.  The VE answered that such individual would not be employable in the national economy.  *Id.* at 256.  The ALJ then asked whether an individual who needed to be absent three or more days a month due to various symptoms would be employable in the national economy.  *Id.*  The VE responded "[n]o."  *Id.*

Plaintiff's counsel also examined the VE and asked if the need to get up and walk around, as specifically described by Plaintiff's doctors, would affect the referenced hypothetical individual's ability to work.  *Id.* at 251–52.  The VE answered that it would not as "most people take about nine minutes an hour to walk around if their back hurts, chat with other people and go to the restroom."  *Id.*

### B.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  Plaintiff bears the burden of proving that he is disabled, and

he is responsible for producing evidence to support his claim.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled.  *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).   At step one, the ALJ must determine whether the claimant is currently unemployed; at step two, the ALJ must determine whether the claimant suffers from "severe"[4] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is unable to return to his past relevant work given his Residual Functional Capacity ("RFC");[5] and if not, at step five, the ALJ must determine whether the claimant is unable to perform other work as it exists in the national economy, given his age, education, RFC, and work experience.  *Id.*  While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability . . . [a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

---

[4] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to do basic work activities for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1509, 404.1520a(d)(1), 404.1522(a)–(b).

[5] RFC is defined as the "most [a claimant] can still do despite [a claimant's physical and mental] limitations."  20 C.F.R § 416.945(a).

### C.  The ALJ's Decision

On October 25, 2018, the ALJ concluded that Lombana has not been under a disability within the meaning of the Social Security Act.  R. at 66.  In reaching her decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these types of claims.  R. at 66–75; *see* 20 C.F.R. § 416.920(a)); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).  At step one, the ALJ determined that Lombana had not engaged in substantial gainful activity since March 25, 2016, the application date.  R. at 68.  However, the ALJ noted that Lombana was still working part-time and her earnings are "very close to constituting substantial gainful activity."  *Id.* at 68–69.  Indeed, according to the ALJ, "[a]n individual's earnings from work activities are considered to be at the substantial gainful activity level if he or she generates monthly average income of $1,130 for 2016 and $1,170 for 2017."  *Id.* at 68.  The ALJ noted that Lombana "earned an average of $1,074.33 for 2016 and $1,168.10 for 2017, which is just under the threshold for substantial gainful activity."  *Id.*  Specifically, although the difference between her earnings and the threshold in 2016 was $56.00 and in 2017 was $1.90, she still fell below the threshold. *See id.*

At step two, the ALJ determined that Lombana suffers from two "severe" impairments: (1) spine disorders, and (2) dysfunction of major joints.  *Id.* at 69.  The ALJ found that these severe impairments significantly limit Lombana's ability to perform basic work activities.  *Id.*  As to Lombana's alleged hypertension, the ALJ noted the record shows that Lombana's hypertension is "stable and controlled with treatment."  *Id.*  As to Lombana's alleged anxiety, the ALJ found such mental impairment "does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  *Id.*

At step three, the ALJ considered the listing requirements and determined that Plaintiff did not meet or equal the severity of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[6]  *Id.* at 71.  Next, the ALJ determined, after considering the medical record in conjunction with Lombana's subjective allegations, that Lombana has a RFC  to perform "sedentary work,"[7] as defined in 20 C.F.R. section 416.967(a), except that she can "sit/stand at will" with no time off task.  *Id.*  In addition, Lombana can also "occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds, can "occasionally crawl, stoop, kneel and crouch, but can frequently balance," and can also "frequently reach above shoulder level, handle (gross manipulation) and frequently finger (fine manipulation with both hands)."  *Id.*  However, Lombana "can never be exposed to hazardous machinery, unprotected heights and vibration, but she could occasionally be exposed to the operation of a motor vehicle."  *Id.*  The ALJ included that Lombana "needs to walk for five minutes every ninety minutes."  *Id.*

At step five, the ALJ found that Lombana is capable of performing her past relevant work as a building equipment and supplies sales representative.  *Id.* at 75.  Although the ALJ noted that the VE testified that Lombana acquired work skills that are transferable to the job of a telemarketer, the ALJ determined that Lombana could not successfully adjust to the job of a telemarketer.  *Id.*  The ALJ, nevertheless, concluded that Lombana is "able to perform her past relevant work . . . as

---

[6] The Listing of Impairments is a predetermined set of major body system impairments that are considered severe enough to prevent an individual from engaging in any gainful activity, thereby rendering an individual who meets a listed impairment disabled. Such an individual will be considered disabled regardless of age, education, and work experience.  An individual's impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment.  *See* 20 C.F.R. §§ 416.925; 416.920(d); 416.926.

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

actually performed." *Id.*   Accordingly, the ALJ found that Lombana was not disabled under sections 216(i) and 233(d) of the Social Security Act.  *Id.*

## II.      STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew."  *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision.  *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015).  Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence.  *See Ellison*, 355 F.3d at 1275.  In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied.  *Id.*  However, no presumption of validity attaches to the ALJ's conclusions of law.  *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.   ANALYSIS

Plaintiff argues that the ALJ committed the following five errors: (1) the ALJ erred in finding that Plaintiff can perform her past relevant work; (2) the ALJ erred in failing to properly consider all the relevant evidence; (3) the ALJ erred in discounting the medical opinions of treating physicians, Dr. Manuel Feijoo and Dr. Sara Zayas; (4) the ALJ erred because the RFC is not supported by substantial evidence or by a treating or examining medical source; and (5) the ALJ erred in failing to properly consider her medication's side effects.  ECF No. [19] at 6–17.  The undersigned considers each argument in turn.

#### A. The ALJ Did Not Err In Finding That Plaintiff Can Perform Her Past Relevant Work As Actually Performed.

Plaintiff challenges the ALJ's finding that she is able to return to her past relevant work as a sales representative for two reasons.  ECF No. [19] at 6–8.  First, Plaintiff argues that the ALJ failed to "investigate and make specific findings of fact regarding the physical and mental demands of Plaintiff's past relevant work as required by SSR 82-62."  *Id*. at 6.  Plaintiff contends that the ALJ merely "concludes summarily" that her past work, as performed, is consistent with her RFC, without specifically discussing how Plaintiff's work functions or impairments would affect her ability to perform those jobs.  *Id.* at 7.  Second, Plaintiff argues that the ALJ's finding that she can return to her past relevant work is "directly and irreconcilably inconsistent" with the Dictionary of Occupational Titles ("DOT") requirements for that job.  *Id*.  Specifically, Plaintiff argues that the DOT listing for her past relevant work indicates that the job is generally performed at a light level of exertion, yet the ALJ expressly found that Claimant only has the RFC to perform at a sedentary level of exertion.  *Id*.  Plaintiff contends that this inconsistency cannot be reconciled "within the four corners of the decisions document."  *Id*.

As to Plaintiff's first point, Defendant counters that the record adequately reflects the requirements of Plaintiff's past job, as she performed it.  ECF No. [21] at 5–8.  Defendant argues that a review of the record is proper and dictates the conclusion that substantial evidence supports the ALJ's conclusion.  *Id.* at 7.  As to Plaintiff's second contention, Defendant responds that the ALJ did not find that Plaintiff could perform her past work as generally performed, but rather, that Plaintiff could perform the job as actually performed which is at the sedentary level.  *Id*. at 7–8.  Because the RFC limited her to sedentary work, the ALJ's opinion that she could return to her past relevant work as she performed it is supported by substantial evidence.  *Id*. at 8.

As an initial matter, Plaintiff's contention that the Court is restricted to the "four corners of the decision document," ECF No. [19] at 7, is rejected in full.  Although the Court should not reweigh the evidence or accept *post hoc* arguments not articulated by the ALJ, the Court is certainly not precluded from reviewing the Record.  Indeed, as Defendant properly noted, it is the Court's obligation to review the Record in order to determine whether the ALJ's decision is supported by substantial evidence.  ECF No. [21] at 7; *citing* 42 U.S.C. § 405(g).  Plaintiff's Response to Defendant's Separate Statement of Material Facts now concedes that some consideration of the Record by the Court is proper.  ECF No. [25] at 3.[8]

As to the substance of Plaintiff's two arguments, the ALJ's opinion, when read in light of the cited testimony presented in the hearing, is supported by substantial evidence.  At step four of

---

[8] Plaintiff argues that Defendant's Statement of Material Facts is "highly unorthodox and largely irrelevant" and that its purpose is to "obfuscate the legal shortcomings of the Commissioner's final decision in this matter."  ECF No. [25] at 1.  Although filing a separate statement of facts is not typical in social security proceedings, the Local Rules state that a motion of summary judgment and its opposition "shall each be accompanied by a separate and contemporaneously filed and served Statement of Material Facts."  Local Rule 56.1(a)(1).  As such, there nothing improper with Commissioner's filing.  Moreover, Defendant's Statement of Material Facts simply lists facts from the Record, and as such, adds nothing more than what is already available to the Court.

the sequential process, the ALJ must determine whether a claimant is unable to return to her past relevant work.  If a claimant can perform any of her past relevant work, either as performed by the claimant or as it is generally performed, a claimant is not disabled.  20 C.F.R. §§ 416.920(f), 416.906(b)(3); Social Security Ruling (SSR) 82-61.  In determining whether Plaintiff could perform past relevant work, the ALJ's opinion relied on only one job, the sales representative-building equipment and supplies.  R. at 75.  SSR 82-62 specifically provides that "statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work."  Here, the VE relied on Claimant's testimony to determine that her past relevant work included work as a sales representative-building equipment and supplies and found that, although unusual, she performed it at the sedentary level and not as it is generally performed which is at the light level of exertion.  R. at 251.

The ALJ then asked Plaintiff's counsel if there was any objection to the way that the past work had been classified, and counsel responded that there was no objection.  *Id.* at 252. Thereafter, the VE was given various hypotheticals, one which included the limitations posed by Plaintiff's RFC.  R. at 253.  Specifically, the VE was asked if a person who was limited to a sedentary level of exertion could return to Plaintiff's past relevant work as performed.  *Id.*  The VE testified that such a person could return to Plaintiff's past relevant work as performed.  *Id.* Although the ALJ did not cite to that testimony in her opinion, the undersigned sees no basis to remand as the testimony was detailed, clear and based on Plaintiff's testimony.  Indeed, Plaintiff offers no argument to challenge the conclusion, but rather argues that the ALJ should have said more in concluding that her RFC did not limit her from her past relevant work.  Given the clarity of the testimony on this point, the undersigned finds that nothing more was required.

The second argument relies on a reading of the ALJ's opinion that not only discounts the record, but also the full opinion itself.  Although the ALJ's opinion on this point is not particularly well-drafted, it does not warrant remand.  In the bold-faced heading for the step five analysis, the ALJ lists the sales representative-building equipment and supplies job as Plaintiff's past relevant work and cites to the DOT number for the work including its classification as light in exertion.  *Id.* at 75.  However, in the last sentence of the body of that section containing the ALJs reasoning, the ALJ finds that "[C]laimant is able to perform it as actually performed."  *Id.* at 75.  The word "it" being a reference to her past relevant work.  In short, the ALJ found that she could perform her past work, not as generally performed, but as actually worked.  Plaintiff's argument only reads the heading and disregards the analysis provided by the ALJ.  The inconsistency that Plaintiff attempts to draw is not a fair reading of the opinion, as the opinion, when read in full, defines her past work as she performed it.  As such, remand is not appropriate.

### B.  The RFC Is Supported By Substantial Evidence.

Plaintiff argues that although the ALJ discussed the surgical tumor extraction and a subsequent surgical repair of a spinal fluid leak, she failed to fully consider all of Plaintiff's "continuing cervical and lumbar spinal impairments."  ECF No. [19] at 10; ECF No. [23] at 4–7.  Plaintiff argues that she has "chronic low back pain and hip pain, with numbness and tingling in both legs, impaired balance, an inability to sense the need to urinate, and fecal incontinence."  ECF No. [19] at 10.  Plaintiff points to three MRI tests and a CT examination that were not considered by the ALJ in support of her argument that the ALJ's opinion is not supported by substantial evidence.  *Id.*  Finally, Plaintiff submits that the ALJ improperly focused on unremarkable neurological findings that were part of an unrelated medical assessment.  *Id.* at 10–11.

Defendant counters that the ALJ does not have to discuss all the evidence when determining Plaintiff's RFC.  ECF No. [20] at 9.  Nevertheless, Defendant argues that the ALJ's opinion is supported by substantial evidence in that the ALJ not only considered the medical records as a whole, but also considered Plaintiff's current work activity.  *Id.* at 8–9.

In terms of the applicable standard, it should be noted that Plaintiff does not specifically argue that the ALJ erred in determining the RFC; rather, she simply makes the claim that the ALJ failed to properly consider and analyze the relevant evidence "as required by law."  ECF No. [19] at 9.  Defendant's Motion interprets the argument as challenging whether the ALJ's RFC is supported by substantial evidence.  ECF No. [20] at 8–10.  In the Reply, Plaintiff does not challenge that standard.  ECF No. [23] at 4–7.  Given that the ALJ found that Plaintiff's spine disorders and dysfunction of major joints was "severe," the undersigned will review Plaintiff's argument as being a specific attack on the ALJ's determination of her RFC.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 776 (11th Cir. 2019) (internal quotation marks omitted) (quoting *Lewis*, 125 F.3d at 1440).  "The ALJ makes this assessment by considering the claimant's physical, mental, and other abilities affected by the impairments."  *Id*. (citing 20 C.F.R. § 404.1545(b)–(d)).  The ALJ also assesses a claimant's residual functional capacity based on all of the relevant medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  However, administrative law judges "are not required to refer to every single piece of evidence presented to them in their decisions."  *Williams v. Comm'r, Soc. Sec. Admin.*, No. 18-14704, 2020 WL 853566, at *2 (11th Cir. Feb. 20, 2020) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Here, after finding that Claimant had "severe" spine disorders and dysfunction of major joints, the ALJ determined that Plaintiff had the RFC for sedentary work with a sit/stand option, and additional postural, manipulative, and environmental limitations. R. at 71. A review of the ALJ's opinion shows that substantial evidence supported that conclusion. The ALJ considered her two back surgeries: the first on June 26, 2015 to remove a tumor and then a second surgery to remove fluid in her spine on March 18, 2016. *Id.* The ALJ opinion referenced the follow up notes, dated May 9, 2016, that showed she was "doing well" and that her "pain was controlled." *Id.* The ALJ also noted other records, including (1) a follow up MRI of the lumbar spine performed on July 13, 2017, that "revealed stable post-surgical changes consistent with laminectomies at T11-T12, no evidence of suspicious leptomeningeal or nodular mass like enhancement, and stable clumping of the cauda equine nerve roots beginning at the level of T12"; (2) the results of a neurological examination on July 11, 2016, that revealed that Plaintiff had full strength in all extremities; and (3) Plaintiff's April and June, 2018, evaluations where Plaintiff reported that she felt better after receiving physiotherapy. *Id.* at 71–74.

Although Plaintiff claims the ALJ did not mention the July 2017 lumbar MRI results, the ALJ expressly discussed the physician's impressions of those tests. *Id.* at 72. The ALJ considered Plaintiff's treatment notes and found that despite spinal abnormalities, Plaintiff had full strength, normal gait, normal range of motion, and normal sensation. *Id.* at 73. As late as June 11, 2018, the medical records shows that Plaintiff was doing well, and she denied any additional weakness or neurological changes. *Id.* The ALJ relied on the medical records that showed there were no deficits, that strength in her upper and lower extremities was normal at 5/5 in all major muscle groups. *Id.* Moreover, there were no sensory deficits in either upper or lower extremities. *Id.* The ALJ concluded that that the notes showed that she had gradual improvement of her symptoms,

which was supported by her continued ability to work. *Id.* at 74. Indeed, at the time of the hearing Plaintiff testified she worked five days a week. *Id.* at 239.

Plaintiff's citation to the three MRIs and the one CT scan, one which was cited to by the ALJ, in support of her claim that the ALJ did not adequately address the medical records is unpersuasive. Indeed, although Plaintiff's Reply recites some of the specific language in the reports associated with those exams, ECF No. [24] at 5–7, Plaintiff fails to show how those reports are either contrary to the finding that the spinal issues were severe, or, more importantly how any of that information undermines the finding that she can work with the limitations the ALJ found in the RFC. Without some discussion as to how these reports contradict or otherwise effect the RFC, simply pointing to reports that the ALJ did not cite to is insufficient to prove that either the ALJ's findings are not supported by substantial evidence.

Plaintiff's argument that the neurological records cited by the ALJ were part of a physical exam unrelated to her back issue, and therefore should not have been relied upon, ECF No. [19] at 10–11, 13, is unpersuasive. As Defendant noted, two of the neurological findings that the ALJ relied on were conducted in connection with her spinal surgery and reports of pain. R. at 72–73, 661, 670–71. The undersigned finds that the ALJ evaluated the medical opinions and Plaintiff's testimony in determining the RFC, and such determination was supported by substantial evidence.

### C. The ALJ Did Not Err In Rejecting The Medical Source Opinions Of Plaintiff's Treating Physicians, Dr. Manuel Feijoo And Dr. Sara Zayas.

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of two of her treating physicians, Dr. Manuel Feijoo and Dr. Sara Zayas. ECF No. [19] at 11. Plaintiff argues that because the ALJ failed to consider "important evidence" reflecting her significant musculoskeletal abnormalities, her assessment of the medical opinions should be given "no deference." *Id.* at 13. Defendant counters that the ALJ properly considered the opinions of Dr.

Feijoo and Dr. Zayas.  ECF No. [20] at 10.  According to Defendant, the ALJ provided good cause, supported by substantial evidence, for assigning little weight to the opinions of Dr. Feijoo and Dr. Zayas.  *Id*. at 10–12.  Defendant also argues that Plaintiff cannot substitute her assessment of the evidence for the ALJ's assessment.  *Id*. at 13.

The Eleventh Circuit has held that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" exists when a physician's opinion is (1) conclusory, (2) contrary to or unsupported by the record evidence, or (3) inconsistent with the physician's own medical records.  *See Carroll v. Comm'r, Soc. Sec. Admin.*, 453 F. App'x 889, 893 (11th Cir. 2011).  "Two factors that may weigh in favor of discounting a treating physician's opinion are when the opinion is inconsistent with the physician's own treatment notes and when the opinion appears to be based primarily on the claimant's subjective complaints of pain."  *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007).  "When an ALJ articulates specific reasons for declining to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error."  *Carroll*, 453 F. App'x at 893 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).  Indeed, a court "will not second guess the ALJ about the weight [a] treating physician's opinion deserves so long as he articulates a specific justification for it."  *Hunter*, 808 F.3d at 823.

Here, Dr. Feijoo opined that Plaintiff had restrictions consistent with sedentary work, but also found that she needed to use a cane when engaging in occasional standing/walking, that she could not frequently lift any weight, that she would miss work three to four times a month, and that her impairments met Listing 1.04A for disorders of the spine.  R. at 74, ECF No [12-1] at 150–

54. Dr. Zayas, who also treated Plaintiff beginning on January, 2018, submitted the same opinion as Dr. Feijoo.  ECF No [12-1] at 60–64.

The ALJ's decision articulated specific reasons for assigning little weight to both of those opinions and such decision was supported by substantial evidence.  First, the ALJ noted that both doctors had only seen Plaintiff for a limited time.  Dr. Feijoo, who treated Plaintiff following her car accident in January 2018, had only treated Plaintiff for six months before rendering his opinion. R. at 74.  As to Dr. Zayas, the ALJ noted that her opinion, submitted in June 2018, had no "longitudinal history.  *Id.*  The record reflects that Dr. Zayas only saw Plaintiff once.  Although the length of time a doctor sees a patient can factor into the weight the opinion is given, 20 C.F.R. § 416.927(c)(2), (c)(2)(i) (amount of time a claimant has seen a treating source can factor into the weight the source's opinion receives), six months is not necessarily a short amount of time. However, the ALJ provided other reasons which the undersigned finds persuasive.

The ALJ explained that Dr. Feijoo's opinion was inconsistent with Plaintiff's reported improvement, the normal physical examination findings from other providers; and Plaintiff's part-time work activity.  R. at 74.  Each of the reasons were supported in the opinion, and in the record. Dr. Feijoo's own treatment notes reported that Plaintiff was feeling better after receiving physiotherapy.  ECF No. [20-1] at 139.  In addition, the neurological examinations conducted on May 2018 and June 2018 noted that she was in "no acute distress" belying the claims that her pain then produced limitations found my Dr. Feijoo and Dr. Zayas.  ECF No. [12-1] at 38.

Plaintiff's own testimony regarding her present work activity showed that Plaintiff's limitations were not as portrayed in the medical opinions of these providers in that she was able to attend work and sit and stand.  R. at 239.  Indeed, she was able to work five days a week, working up six hours on one day.  *Id.*  S*ee Phillips*, 357 F.3d at 1241 (physician's opinion properly given

less weight where it conflicted with the claimant's activities); *Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 806–07 (11th Cir. 2014). Regarding the use of a cane, which Plaintiff did not bring to the hearing, Plaintiff testified that she used it when going to the park and to walk on uneven surfaces but there was no evidence that she needed it for work. R. at 231–32. Moreover, she testified that she missed one day of work because of her pain but provided no other testimony to having to miss work due to her impairments. *Id*. at 232–33. In short, the ALJ's reasoning that Dr. Feijoo's opinion was inconsistent with the record evidence and Claimant's testimony was sufficiently detailed and was good cause to discount it. Dr. Zayas' opinion was essentially the same as Dr. Feijoo's, and the ALJ made the same findings to discount it. Having already found that those reasons were sufficient, the court finds that the ALJ's discounting of Dr. Zayas is supported by substantial evidence. Next, in her Reply, Plaintiff argues that the ALJ makes no effort to explain how the nature of her part time work can be "extrapolated" to allow for full time work. ECF No. [23] at 8. However, the point is not what can be extrapolated, the point is that in testifying about her part time work, there was no testimony that she needed a cane and no evidence she needed to miss work at the rate these doctors opined.

Finally, Plaintiff claims that the ALJ adopts most of the opinions of these two doctors and only "objects to the expert opinions that directly contradict her unsubstantiated findings on an ability to work on a full-time bases." ECF No. [23] at 8–9. As an initial matter, the undersigned sees no issue with the fact that the ALJ considered some of their opinions. Indeed, although the ALJ assigned little weight, she did not discount them in their entirety. Moreover, the portions of their opinions that Plaintiff argues were discounted, such that Plaintiff "must elevate her legs or use a recliner during the day, should use a cane when walking, and that she will likely be absent from work due to her back impairments 4 times per month," ECF No. [23] at 8–9, are exactly what

is contradicted by the record.  Indeed, Dr. Feijoo's opinion stated that Plaintiff did *not* need to sit in a recliner or lie down during an eight-hour work day, but rather, only needed to raise her legs "occasionally."  R. at 150.  As to the cane, Plaintiff testified that she only used her cane on uneven surfaces or to walk more than a block and went to the hearing without the cane. R. at 231–32.  The undersigned finds that the ALJ provided good cause for her decision to assign little weight to the opinions of Dr. Feijoo and Dr. Zayas.

### D.  The ALJ's RFC Finding Is Supported By Substantial Evidence.

Plaintiff argues the ALJ's RFC finding is not based on substantial evidence because it is not supported by evidence from either a treating or examining medical source.  ECF No. [19] at 14.  According to Plaintiff, the ALJ's RFC assessment amounts to nothing more than an improper substitution of the ALJ's medical judgment for that of recognized medical experts because the ALJ's RFC was not supported by either a treating or examining medical source.  *Id.* at 16. Defendant counters that Plaintiff's assertion that the ALJ somehow overstepped her authority by evaluating the medical and other evidence should be rejected.  ECF No. [20] at 14–15.  According to Defendant, the ALJ was not required to have a medical opinion to support her RFC assessment. *Id*. at 14.  Defendant also argues that Plaintiff's normal physical examination findings and robust daily activities support the ALJ's RFC finding.  *Id*. at 15.

In the Eleventh Circuit, there is no requirement that the ALJ have a medical opinion to support her RFC assessment, and an ALJ does not improperly act as both judge and physician by determining a claimant's RFC.  *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (reversing the district court's holding that the ALJ needed a medical opinion to determine the claimant's case, and stating "[c]ontrary to the district court's reasoning, the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an

adjudicator responsible for assessing Mr. Castle's RFC"); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors"); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (rejecting the claimant's argument that without a medical source statement from her treating physician the ALJ could not form an RFC). Contrary to Plaintiff's argument, the ALJ did not err in failing to obtain a medical opinion to support her RFC determination. Although Plaintiff relies on *Coleman* for the proposition that the ALJ could not form an RFC without a medical source statement, several courts in this Circuit have rejected *Coleman*. *Coleman v. Barnhart*, 264 F. Supp. 2d. 1007, 1010 (S.D. Ala. May 9, 2003); *see e.g.*, *Beote v. Colvin*, No. 5:12cv115/EMT, 2013 WL 4096151, at *11 (N.D. Fla. Aug. 13, 2013) (disagreeing with *Coleman* and listing other cases from this Circuit who did likewise); *Webb v. Colvin*, No. 3:12cv506-CSC, 2013 WL 2567556, at *5 (M.D. Ala. Jun 11, 2013) (disagreeing with *Coleman* and noting the Chief Judge of the Southern District of Alabama has rejected *Coleman*). Accordingly, Plaintiff's argument that the ALJ erred in determining Plaintiff's RFC without a medical source statement is rejected.

### E. The ALJ Did Not Fail To Consider The Side Effects Of Plaintiff's Medications.

Plaintiff argues that the ALJ erred because she failed to consider the side effects from her medications. ECF No. [19] at 16. According to Plaintiff, the ALJ's failure to properly account for the side effects from her medications circumvents the Social Security Administration's own requirements and precludes proper judicial review. *Id*. at 16–17. Defendant counters that Plaintiff's argument is based solely on the ALJ's failure to discuss the alleged side effects of Plaintiff's medications in her decision, but that she points to no authority requiring the ALJ to discuss Plaintiff's alleged medication side effects. ECF No. [20] at 15. Specifically, Defendant

notes that the regulations at 20 C.F.R. § 416.929 and SSR 16-3p[9] and SSR 96-8p only require the ALJ to consider the medication side effects, not to discuss them.  *Id*.  In short, as long as side effects of Plaintiff's medications do not cause more limitations than those found in her RFC, the ALJ's finding is supported by substantial evidence.  *Id*. at 16.

An ALJ has an affirmative duty to consider the side effects of medications on a claimant's ability to work.  *See Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) ("[w]e've said that the side effects of medications could render a claimant disabled or contribute to her disability, and the ALJ has a duty to investigate these side effects.").  Indeed, Social Security Regulations require ALJs to consider drug side effects, including when determining a claimant's residual functional capacity assessment.  *See* SSR 16-3p (noting side effects are a factor to be considered when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms); SSR 96-8p (stating the RFC assessment must be based on all of the relevant evidence in the case record including evidence regarding side effects).  "An ALJ's determination that medication side effects do not present a significant problem is supported by substantial evidence if the claimant made only an isolated complaint about the side effects and the record does not suggest her doctors were concerned about the side effects."  *Brown*, 680 F. App'x at 826.

There is insufficient evidence in this record to find that these side effects required anything more than what the ALJ did here.  Again, a review of what was actually said at the hearing is important.  At the hearing, Plaintiff said her medication gave her the following side effects: "dry mouth, dizziness a little bit, and my hands are always shaking."  R. at 234.  In her Motion, however, she cites to "dry mouth, dizziness and cold sweats."  ECF No. [19] at 17.  The four medical records referred to in the Motion do not support her claim.  In one, a doctor noted that Plaintiff said she

---

[9] SSR 96-7p has been superseded by SSR 16-3p.

was "sleepy." R. at 462.  The second note is just a reference to her own statements and provides no medical opinion as to how those side effects might impair her.  The third note, the medical opinion of Dr. Feijoo, notes dizziness and dry mount but specifically states that those would not put her off take greater than fifteen percent in an eight-hour day.  ECF No [12-1] at 151.  Finally, in Dr. Zayas' report, there is a notation that Plaintiff has dry mouth and dizziness but left blank the question of whether it would affect her work day.  *Id.* at 61.  On this record, there is no reason to find that the ALJ had an obligation to do anything more.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) (holding that the record shows no reversible error in the ALJ's consideration of testimony about alleged side effects from the medication).

## IV.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Motion, ECF No. [19], be **DENIED** and Commissioner's Motion, ECF No. [20], be **GRANTED**.

## V.    OBJECTIONS

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, Chief United States District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Court of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 20th day of August, 2020.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**